**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

| | |
|---|---|
| **ALECE HADLEY,**  ) | |
| **IVA BURKETT, and**  ) | |
| **JEAN MONTEL,**  ) | |
| ) | **Civil Action No.:** |
| **Plaintiffs,**  ) | |
| ) | **1:26-cv-273** |
| **v.**  ) | |
| ) | **JURY DEMAND** |
| **ESCAMBIA COUNTY**  ) | |
| **BOARD OF EDUCATION,**  ) | |
| ) | |
| **Defendant.**  ) | |

## COMPLAINT

### I.    INTRODUCTION

1.    This is an action for legal and equitable relief brought by Plaintiffs Alece Hadley, Iva Burkett, and Jean Montel to redress sex discrimination, sexual harassment, sexually hostile work environment, and retaliation. The suit is brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (hereinafter "Title VII") which provide for relief against discrimination, harassment, and retaliation in employment. Plaintiffs seek available relieve under these statutes and request a jury trial pursuant to 42 U.S.C. §1981a. This suit also asserts state law claims of negligent/wanton training, negligent/wanton supervision, and negligent/wanton retention.

## II.   JURISDICTION AND VENUE

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 28 U.S.C. §§ 2201 and 2202. Jurisdiction over Plaintiff's claims under Alabama law exist pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. §1367.

3.    A substantial portion of the unlawful employment practices alleged hereinbelow were committed by the Defendants within Escambia County, Alabama. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

4.    The Plaintiffs request a jury trial on all issues pursuant to 42 U.S.C § 1981a.

## III.   PARTIES

5.    Plaintiff, Alece Hadley, is a female citizen of the United States, and a resident of the State of Alabama. Hadley was an employee of Defendant at all times relevant to this litigation.

6.    Plaintiff, Iva Burkett, is a female citizen of the United States, and a resident of the State of Alabama. Burkett was an employee of Defendant at all times relevant to this litigation.

7.    Plaintiff, Jean Montel, is a female citizen of the United States, and a resident of the State of Alabama. Montel was an employee of Defendant at all times relevant to this litigation.

2

8. Defendant, Escambia County Board of Education, is an employer doing business in this district and division with its central office located in Brewton, Alabama location, and at all times relevant to this action, the Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964.

## IV. ADMINISTRATIVE EXHAUSTION

9. The Plaintiffs have satisfied all conditions precedent to the filing of this legal action as required by Title VII.

10. On or about May 27, 2025, Plaintiff Hadley filed an EEOC charge alleging sex discrimination/harassment and retaliation.

11. On or about June 4, 2025, Plaintiff Hadley filed an amended EEOC charge alleging sex discrimination/harassment and retaliation following her termination.

12. Plaintiff Hadley subsequently received a Right-To-Sue Notice from the DOJ. The Right to Sue Notice was electronically mailed to Plaintiff and received on May 15, 2026.

13. On or about May 29, 2025, Plaintiff Burkett filed an EEOC charge alleging sex discrimination/harassment and retaliation.

14. On or February 19, 2026, Plaintiff Burkett filed a second EEOC charge alleging sex discrimination/harassment and retaliation.

15.     Plaintiff Burkett subsequently received a Right-To-Sue Notices for both EEOC charges from the DOJ.  The Right to Sue Notices were electronically mailed to Plaintiff and received on April 27, 2026.

16.     On or about May 28, 2025, Plaintiff Montel filed an EEOC charge alleging sex discrimination/harassment and retaliation.

17.     On or February 19, 2026, Plaintiff Montel filed a second EEOC charge alleging sex discrimination/harassment and retaliation.

18.     Plaintiff Montel subsequently received Right-To-Sue Notices for both EEOC charges from the DOJ.  The Right to Sue Notice was electronically mailed to Plaintiff and received on  May 15, 2026.

**IV.    STATEMENT OF FACTS**

19.     Plaintiffs re-allege and re-plead the above and incorporate by reference paragraphs 1 through 18 above with the same force and effect as if fully set out in specific detail herein below.

20.     Plaintiffs were subjected to discrimination based on sex.

21.     Plaintiffs were discriminated against and retaliated against in regards to assignments, pay, disparate treatment, harassment, suspension, and discipline.

22.     Plaintiff Hadley was also discriminated against and retaliated against in regards to termination.

4

23.     Defendant did not have a legitimate non-discriminatory, non-retaliatory reason for its conduct.

24.     The discrimination and harassment which Plaintiffs were subjected included, but was not limited to, harassing comments based on gender and sexual harassing comments, unequal treatment, and discipline.

25.     The discrimination harassment which Plaintiffs were subjected to was unwelcomed, based on sex, and was severe or pervasive so that it effected the terms and conditions of their employment.

26.     Plaintiffs objected to the discrimination, harassment and retaliation; however, prompt and effective remedial action was not taken.

27.     Because of the complaints and the open and obvious nature of the harassing behavior, Defendant had actual and constructive knowledge of the harassment and discrimination but failed to take prompt and effective remedial action.

### PLAINTIFF ALECE HADLEY

28.     Plaintiff Alece Hadley, began working for Defendant, Escambia County Board of Education, in August 2024 as a bus driver.

29.     Plaintiff Hadley made a complaint about supervisor Chris Emmons regarding the smell of alcohol on his breath at work and regarding his personal inappropriate relationship with subordinate female bus driver.

30. When Hadley reported the inappropriate relationship between Emmons and the female driver to supervisor Billy Mills, nothing was done.

31. Plaintiff Hadley also reported the inappropriate relationship to District Transportation Supervisor Forrest Jones.

32. Again, nothing was done.

33. After Plaintiff Hadley's complaints, Emmons told her that she had no proof and said, "y'all must want some of this, too."

34. Plaintiff Hadley found the comment to be inappropriate, offensive, and sexual in nature.

35. In or around October 2024, Emmons filed a grievance against Plaintiff Hadley for her complaint against him.

36. Plaintiff Hadley met with Dr. Cheryl Jones, Human Resources, and complained about Emmons' conduct and inappropriate comment.

37. Dr. Jones told Plaintiff Hadley not to speak with Emmons and that she would handle it.

38. No corrective action was taken and the harassment and retaliation continued.

39. The next Monday, at 5:30 am, Emmons was sitting between Plaintiff Hadley and the time clock where she was to clock in.

40. Emmons said, "do you have something you want to say to me?"

6

41.    Plaintiff Hadley responded that Dr. Jones said we were not supposed to talk.

42.    Emmons replied, "keep my name out of your fucking mouth."

43.    Plaintiff Hadley found this to be inappropriate, offensive and threatening.

44.    Plaintiff Hadley immediately called and reported this to supervisor Billy Mills.

45.    Plaintiff Hadley was told not to come to the bus shop to clock-in and instead go to the school to do so.

46.    This directive made Plaintiff Hadley afraid as it was dark and nobody was at the school that early in the morning.

47.    This directive also made it more difficult for Plaintiff Hadley to clock in each day and caused Plaintiff Hadley to be exiled away from the other bus drivers.

48.    No action was taken against Emmons and Plaintiff Hadley heard nothing in regard to her complaints.

49.    The harassment and retaliation continued.

50.    Plaintiff Hadley was told that Emmons said he would "make her life a living hell" and "that he was going to put something on her bus to get her in trouble."

51.    Plaintiff Hadley reported this to Assistant Superintendent Brown.

52.    No corrective action was taken and Plaintiff Hadley again received no response regarding her complaint and the harassment and retaliation continued.

53.    Plaintiff Hadley filed a report of harassment against Emmons with the School's Resource Officer.

54.    Plaintiff Hadley was told that the school could not handle it and that she should contact the police.

55.    Plaintiff Hadley reported Emmons and the lack of response to her previous complaints to Human Resources and was told this was workplace harassment and that they were going to do something about it.

56.    However, no corrective action was taken and the harassment and retaliation continued.

57.    Plaintiff Hadley continued to be intimidated by Chris Emmons and Billy Mills at the bus shop.

58.    Plaintiff Hadley had knowledge of Chris Emmons engaged in sexual harassment of other employees.

59.    Plaintiff Hadley was also aware of Emmons using the "N" word in the presence of African-American bus driver, Janice McDougal.

60.    McDougal complained to Forrest Jones and Superintendent Dr. Michele Collier.

61.    No corrective action was taken.

62. McDougal received a letter from the Superintendent that said the school did not condone racism, and was sorry she felt uncomfortable and if she felt bad enough, she could transfer to Brewton to work (which was 35 miles from her home and would have cause undue hardship).

63. After Plaintiff Hadley's complaints, Defendant discriminated and retaliated against her by taking away the opportunity for field trips, which provided extra pay.

64. The field trips and other trips were cut down, which affected Plaintiff Hadley's income.

65. Male bus drivers and employees who did not complain were not treated in the same manner and were given more favorable and better paying assignments.

66. Plaintiff Hadley, Plaintiff Burkett, and Plaintiff Montel also complained about Emmons and bus management regarding gender discrimination and retaliation.

67. Plaintiff Hadley, Plaintiff Burkett, and Plaintiff Montel met with Human Resources and the Superintendent several times about these matters.

68. No corrective action was taken by Defendant.

69. Because of Plaintiff Hadley's complaints about Emmons, he would stare at her and continuously try to intimidate her.

70.   On May 14, 2025, Plaintiff Hadley was having a discussion with Janice McDougal on McDougal's bus.

71.   McDougal yelled at Plaintiff Hadley to get off her bus, which Hadley did.

72.   McDougal got off her bus and then tried to physically fight Plaintiff Hadley.

73.   McDougal was saying she was going to "whoop her [Hadley's] ass."

74.   Employees held McDougal back and Chris Emmons yelled, "let her go, let's see what happens, let them fight it out."

75.   Again, Emmons' comments were offensive and inappropriate.

76.   Plaintiff Hadley was then suspended pending investigation.

77.   The suspension was further retaliation and harassment.

78.   Other females in the department have been subjected to harassment and discrimination, and have reported the harassment and discrimination; and nothing has been done.

79.   Other female employees have also been retaliated against for making complaints of discrimination and harassment.

80.   Plaintiff Hadley has been discriminated against in regards to assignments, pay, disparate treatment, harassment, suspension and termination.

10

81. Plaintiff Hadley has been subjected to unwelcomed sexual harassment, sex discrimination, and retaliation by Respondent, in violation of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

82. Plaintiff Hadley's contract was not renewed for the following school year.

83. Plaintiff Hadley's termination was discrimination based on her gender and retaliation for her previous complaints of discrimination and harassment.

## PLAINTIFF IVA BURKETT

84. Plaintiff Iva Burkett, began working for Defendant, Escambia County Board of Education, as a bus driver in 2000.

85. Plaintiff Burkett had also worked as a substitute bus driver prior to that time.

86. Beginning in the school year of 2023-2024, the transportation department had a new supervisor named Chris Emmons.

87. Emmons made inappropriate and offensive remarks to female employees.

88. Plaintiff Burkett went to Emmons to clarify something she had been told by supervisor Billy Mills and District Transportation Supervisor Forrest Jones.

89. Emmons response was, "they're fucking idiots….if they'd just let me do my job and quick fucking bothering me."

11

90. Such comments were inappropriate and offensive.

91. Plaintiff Burkett's female co-worker filed a grievance on August 27, 2024, regarding gender discrimination and incidents which female drivers are subjected.

92. Following this grievance, Burkett, Burkett's co-worker, and other female bus drivers had meetings to discuss these issues and their complaints of discrimination, including meetings with the Superintendent and meetings with Human Resources Dr. Cheryl Jones.

93. The only response received by Plaintiff Burkett and her co-workers was continuously, "we will look into this."

94. No corrective action was taken, and nothing changed.

95. Plaintiff Burkett and other females have been discriminated and retaliated against in the form of a reduction in field trips and sports trips.

96. This has caused a decrease in Plaintiff Burkett's pay.

97. Male bus drivers and employees who did not complain were not treated in the same manner and were given more favorable and better paying assignments.

98. Male drivers have not been treated in this discriminatory and retaliatory manner.

99. Plaintiff Burkett is aware that Chris Emmons has engaged in sexual harassment of other employees.

100.   Plaintiff Burkett is aware of Emmons engaging in an inappropriate personal relationship with subordinate bus driver.

101.   Complaints were made about Emmons having this relationship with his subordinate; however, no action was taken by management.

102.   Emmons retaliated against female employees who made the complaints, and has continued to do so with no action being taken by Defendant.

103.   Emmons also used the "N" word in the presence of African-American bus driver, Janice McDougal.

104.   The driver complained to Forrest Jones and Superintendent Dr. Michele Collier.

105.   However, no corrective action was taken.

106.   McDougal received a letter from the Superintendent that said the school did not condone racism, and was sorry she felt uncomfortable and if she felt bad enough, she could transfer to Brewton to work (which was 35 miles from her home and would have cause undue hardship).

107.   Plaintiff Burkett is aware of male coaches yelling at female bus drivers on trips in the presence of school children.

108.   After female bus drivers complained to management about such issues, they had scheduled trips removed causing reduction in pay.

13

109. Male bus drivers have not been treated in this discriminatory and retaliatory manner.

110. Plaintiff Burkett and others have met with Human Resources and the Superintendent about these discriminatory matters.

111. No corrective action has been taken, and Defendant continued to assign bus trips in a discriminatory and retaliatory manner.

112. A male bus driver was hired who had a medical diagnosis which could cause dangerous driving conditions, and this information was known by Defendant.

113. The male driver continuously broke rules, however, he was not disciplined for these matters.

114. Plaintiff Burkett drives a school bus with special needs students.

115. These students were slower to get off of the school bus.

116. Plaintiff Burkett was at the high school unloading students and had her lights on.

117. This male driver pulled around Plaintiff Burkett's bus rather than waiting and following per school policy.

118. Plaintiff Burkett reported this to supervisor Chris Emmons and he told her to, "stay in your lane."

119.    There were other occasions this same male driver was behind Plaintiff Burkett in the drop-off bus line, and he would rev up his engine & hit the brakes at the same time.

120.    He did this repeatedly.

121.    This is referred to as "dogging," and is against policy.

122.    Additionally, the revving up of his engine scared the special needs students on Plaintiff Burkett's bus as it looked like he was going to hit them.

123.    Plaintiff Burkett reported this to supervisor Chris Emmons.

124.    Emmons said Burkett should just arrive at the school later so that she would be behind the male driver to avoid these type issues.

125.    Nothing was done to the male driver, despite his continuous violation of bus policy.

126.    District Transportation Coordinator Forrest Jones acused Plaintiff Burkett of breaking the bus line.

127.    Jones told Plaintiff Burkett several times not to do this also sent the same orders through supervisor Chris Emmons.

128.    Plaintiff Burkett told Mr. Jones that she was not doing what he was accusing her of doing.

129.    Plaintiff Burkett asked him to please watch her bus from a different angle so that he could see the full picture.

15

130. Jones then made Plaintiff drive through the "danger zone" as his solution, which was very dangerous and against policy.

131. Male drivers have not been treated in a similar manner.

132. There have been other instances where male drivers have broken policy, but management will effectively tell Burkett to get out of their [male drivers] way.

133. Male drivers and female drivers have been held to different standards.

134. Plaintiff Burkett is aware of other female employees in the department who have been subjected to harassment and discrimination, who have reported the harassment and discrimination; and nothing has been done.

135. Plaintiff Burkett is aware of other female employees who have been retaliated against for making complaints of discrimination and harassment.

136. Plaintiff Burkett has been subjected to sex discrimination in regards to assignments, discipline, pay, unequal work conditions, disparate treatment, and suspension.

137. Plaintiff Burkett has been subjected to retaliation by Defendant for engaging in protected activity, in violation of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

138. Since the filing of Plaintiff Burkett's EEOC charge, nothing has changed in regards to assignments or other discriminatory matters which were listed in her original EEOC charge.

139. Plaintiff Burkett submitted a grievance on January 28, 2026, alleging continued discrimination.

140. Around the same time, Plaintiff Burkett and Plaintiff Jean Montel (Burkett's co-worker who also filed an EEOC charge alleging discrimination and retaliation similar to what Burkett experienced), were told that a co-worker had made allegations against them.

141. Plaintiff Burkett and Montel were both placed on administrative leave and on February 13, 2026, were called in for a meeting and given a formal letter of reprimand.

142. Employees of Defendant who have engaged in conduct which violates policy and/or discriminated against Plaintiffs and other females  received no such disciplinary actions.

143. Additionally, the same day Plaintiff Montel was given the disciplinary action, she was presented with "Escambia County School Employee Stay-Away Agreement & Conduct Expectations" document stating she was to stay away from certain other employees, including Plaintiff Jean Montel.

144. Defendant has knowledge that Plaintiff Montel and Plaintiff Burkett filed EEOC charges alleging similar conduct, submitted grievances to Defendant and made internal complaints regarding harassment and retaliation together.

145. Such action was discriminatory and retaliatory in nature.

146. This formal discipline and "Stay-Away Agreement" are retaliation for her prior EEOC charge, grievance, internal complaints and engaging in protected activity.

147. Plaintiff Burkett has continued to be subjected to sex discrimination in regards to assignments, discipline, pay, unequal work conditions, and disparate treatment.

148. Plaintiff Burkett has also had been subjected to further retaliation by Defendant for engaging in protected activity, by filing an EEOC charge, making internal complaints, and filing a grievance, in violation of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

## PLAINTIFF JEAN MONTEL

149. Plaintiff Jean Montel began working for Defendant Escambia County Board of Education, in approximately 2013 as a bus driver.

150. Beginning in the school year of 2023, the transportation department had a new supervisor named Chris Emmons.

151. On one occasion Plaintiff Montel had an issue with her school bus.

152. Plaintiff Montel called District Transportation Supervisor Forrest Jones and reported the problem, which made her bus undriveable.

153. Jones told Plaintiff Montel that he would come out to where she was to see about the issue.

154. Forrest Jones arrived and Chris Emmons showed up after Jones, and questioned why Plaintiff Montel had called Jones.

155. Plaintiff Montel told Emmons it was because he [Emmons] was driving on a bus.

156. It was against policy to telephones while driving the bus.

157. Chris Emmons responded to Plaintiff Montel, "fucking idiot."

158. Such comment was inappropriate and offensive.

159. Plaintiff Montel reported this comment to Mr. Jones.

160. Mr. Jones requested that Plaintiff Montel make a handwritten complaint, which she did.

161. After Plaintiff Montel's complaint, Chris Emmons told Plaintiff Montel in an angry tone, "if you have something to say, you need to say it to me."

162. Plaintiff Montel found the conduct to be inappropriate, harassing, and retaliatory.

163. On August 27, 2024, Plaintiff Montel filed a grievance regarding gender discrimination.

164. Plaintiff Montel was supposed to drive the football team to a sporting event.

165. Chris Emmons told Plaintiff Montel either the day of or day before that Coach Harris said he did not want women driving the football team.

19

166. Plaintiff Montel had driven the male sports teams for years.

167. Plaintiff Montel sent her grievance to Superintendent Dr. Michele Collier and supervisor Chris Emmons.

168. Following Plaintiff Montel's grievance, she and several other female drivers have had meetings to discuss issues related to sex discrimination and different treatment, including one other meeting with the Superintendent and two meetings with Human Resources Dr. Cheryl Jones.

169. Plaintiff Montel received no response to her grievance.

170. No corrective action was taken and nothing has changed.

171. Plaintiff Montel and other females, including Plaintiff Burkett and Plaintiff Hadley have been retaliated against for making complaints of discrimination and harassment.

172. Plaintiff Montel and Plaintiff Burkett's assignments were reduced including a reduction in field trips and sports trips.

173. This reduction in trips caused a decrease in Plaintiff Montel's pay.

174. Male bus and employees who did not complain were not treated in the same manner and were given more favorable and better paying assignments.

175. Male drivers have not been treated in this discriminatory and retaliatory manner.

20

176.    Plaintiff Montel drove a bus trip for Junior High Basketball team to attend a game.

177.    Plaintiff Iva Burkett, another bus driver, drove the cheerleaders on a different bus behind them.

178.    It is Defendant's policy to stay together when there are multiple buses going on a trip.

179.    It was very dark outside, and Plaintiff Montel and Burkett were approaching the turn which was very difficult to see, and Plaintiff Burkett had gotten a little behind.

180.    Due to Plaintiff Burkett being a little behind, Plaintiff Montel pulled the bus over on the side of the road to wait for her for a minute so she would not miss the turn.

181.    Coach Smith [male], who was on Plaintiff Montel's bus, got angry with her and told her to go.

182.    Plaintiff Montel told Coach Smith that the buses were supposed to stay together.

183.    Coach Smith continued to get loud in front of the school children and yelled at Plaintiff Montel.

184.    Plaintiff Montel was so upset by the manner in which Coach Smith spoke to her, that Montel was physically shaking.

21

185. When Plaintiff Montel arrived at the school, she called supervisor Chris Emmons and reported Coach Smith's behavior and said she expected something to be done and requested an apology.

186. After the game, Coach Smith got back on the bus and said to Plaintiff Montel, "I take it you called Mr. Jones?"

187. Plaintiff Montel said, "no, I called my supervisor, Chris Emmons."

188. Coach Smith continued being very loud and rude to Plaintiff Montel.

189. Plaintiff Montel told him that this was not the time or the place to discuss this.

190. Coach Smith said, "I'll discuss what I want."

191. Coach Smith further stated, "you won't be driving me again."

192. Plaintiff Montel reported the behavior to Emmons.

193. Forrest Jones, District Transportation Supervisor, told Plaintiff Montel that she would not be driving the trip which she was scheduled for the next day.

194. Such action was discriminatory and retaliatory.

195. Plaintiff Montel complained to Forrest Jones that they could not have a hostile work environment like this with coaches being allowed to yell at female bus drivers.

196. Plaintiff Montel further told Forrest Jones that Coach Smith was rewarded for his behavior.

197.   The removal from trips was retaliation, harassment, and discrimination.

198.   Other trips which Plaintiff Montel was scheduled to drive were taken away from her.

199.   Chris Emmons told Plaintiff Montel they had been cancelled, however, they had actually been taken away from Montel and given to another driver.

200.   Such conduct was retaliation, harassment, and discrimination.

201.   In addition, after Plaintiff Montel's complaints about this matter, Emmons routinely talked badly about her to other drivers.

202.   Montel is aware Chris Emmons has engaged in sexual harassment of other employees.

203.   Plaintiff Montel was aware of Emmons engaging in an inappropriate personal relationship with subordinate bus driver.

204.   Emmons also used the "N" word in the presence of African-American bus driver, Janice McDougal.

205.   After Plaintiff Montel's complaints, Defendant retaliated against her by taking away the opportunity for field trips, which provide extra pay.

206.   The field trips and other bus trips were cut down, which affected Plaintiff Montel's income.

207. Plaintiff Montel and other females including Burkett and Hadley also complained about Emmons and bus management regarding gender discrimination and retaliation.

208. Male and female drivers have been held to different standards and different discipline.

209. There was a male driver who drove across main street, which was against Defendant's policy.

210. This incident was reported to management.

211. Billy Mills said that it did not matter and that he could not say anything to this male driver because he did not want him to quit.

212. Plaintiff Montel applied for a special needs' bus route.

213. Plaintiff Montel was told by District Transportation Supervisor Forrest Jones that she would have to be interviewed.

214. Donnie Faulk and Mr. Smith, both male bus drivers, told Plaintiff Montel that "they did not have to do all of that."

215. Mr. Smith was allowed to drive a bus before being board approved, which was against Defendant's policy.

216. Other female employees in the department have been subjected to harassment and discrimination, have reported the harassment and discrimination; and nothing has been done.

217. Other female employees have been retaliated against for making complaints of discrimination and harassment.

218. Plaintiff Montel has been discriminated against in regards to assignments, discipline, pay, unequal work conditions, harassment, suspension and disparate treatment.

219. Plaintiff Montel has also been subjected to retaliation for engaging in protected activity.

220. Plaintiff Montel also alleged she had been subjected to retaliation by Respondent for engaging in protected activity, in violation of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

221. Since Plaintiff Montel filed her EEOC charge, nothing has changed in regards to assignments or other discriminatory matters which were listed in her original EEOC charge.

222. In fact, Plaintiff Montel submitted a grievance on January 28, 2026, alleging continued discrimination.

223. Around the same time, Plaintiff Montel and Plaintiff Burkett (co-worker who filed an EEOC charge alleging discrimination and retaliation similar to what Montel experienced), were told that a co-worker had made allegations against them.

224. Plaintiff Montel and Plaintiff Burkett since were both placed on administrative leave and then on February 13, 2026, were called in for a meeting and given a formal letter of reprimand.

225. Employees of Defendant who have engaged in conduct which violates policy and/or discriminated against Plaintiffs and others received no such disciplinary actions.

226. Additionally, the same day Plaintiff Montel was given the disciplinary action, she was presented with "Escambia County School Employee Stay-Away Agreement & Conduct Expectations" document stating she was to stay away from certain other employees, including Plaintiff Burkett.

227. Defendant has knowledge that Plaintiff Montel and Plaintiff Burkett filed EEOC charges alleging similar conduct, submitted grievances to Defendant and made internal complaints regarding harassment and retaliation together.

228. Such conduct was discriminatory and retaliatory in nature.

229. Plaintiff Montel believe this formal discipline and "Stay-Away Agreement" are retaliation for her prior EEOC charge, grievance, internal complaints and engaging in protected activity.

230. Plaintiff Montel has continued to be subjected to sex discrimination in regards to assignments, discipline, pay, unequal work conditions, suspension, and disparate treatment.

231.   Plaintiff Montel also had been subjected to further retaliation by Respondent for engaging in protected activity, by filing an EEOC charge, making internal complaints, and filing a grievance, in violation of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

### COUNT ONE: SEX DISCRIMINATION
### AND HARASSMENT PURSUANT TO TITLE VII

232.   Plaintiffs re-allege and re-plead the above and incorporate by reference paragraphs 1 through 231 above with the same force and effect as if fully set out in specific detail herein below.

233.   These claims are being brought on behalf of Plaintiffs Hadley, Burkett, and Montel.

234.   Plaintiffs were subjected to sex discrimination, sexual harassment, and a sexually hostile work environment.

235.   The discrimination and harassment and which Plaintiffs were subjected included, but was not limited to, harassing and unfair behavior based on sex and sexual comments.

236.   The harassment which Plaintiffs were subjected to was unwelcomed, based on sex, and was severe or pervasive so that it effected the terms and conditions of their employment.

237.   Plaintiffs objected to the harassment and discrimination; however, prompt and effective remedial action was not taken.

238. Because of the complaints and the open and obvious nature of the harassing behavior, Defendant had actual and constructive knowledge of the harassment but failed to take prompt and effective remedial action.

239. Plaintiff were discriminated against in regards to assignments, pay, disparate treatment, harassment, discipline and suspension.

240. Plaintiff Hadley was also discriminated against in regards to her termination.

241. Defendant did not have a legitimate non-discriminatory, non-retaliatory reason for its conduct.

242. Defendant's conduct was pretext for discrimination.

243. Male employees were not treated in similar manner as were Plaintiffs.

244. Plaintiffs have suffered emotional distress, embarrassment, and humiliation as a result of the harassment and Defendant's conduct.

245. Defendant's actions were willful, with malice and with reckless disregard for Plaintiffs' rights.

## COUNT TWO: PLAINTIFF ALECE HADLEY'S CLAIMS OF RETALIATION PURSUANT TO TITLE VII

246. Plaintiffs re-allege and incorporate by reference paragraphs 1-245, above with the same force and effect as if fully set out in specific detail hereinbelow.

247. Plaintiff Hadley engaged in protected activity.

248. Plaintiff Hadley complained to supervisors, management, and Human Resources about sex harassment, sexual discrimination, and retaliation which she and others were subjected.

249. Plaintiff Hadley filed an EEOC charge complaining of sex harassment, sexual discrimination, and retaliation which she was subjected.

250. As a result of Plaintiff Hadley's protected activity and complaints, Plaintiff Hadley was subjected to harassment, discipline, disparate treatment, unequal assignments, reduced pay, suspension, and termination.

251. Defendant's actions are causally related to Plaintiff Hadley's protected activity.

252. Defendant does not have a legitimate non-retaliatory reason for its actions.

253. Defendant's conduct was pretext for retaliation.

254. Plaintiff Hadley was treated differently than similarly situated individuals who did not complain of harassment or discrimination.

255. Because of such conduct, the Plaintiff Hadley has suffered severe emotional distress, embarrassment and humiliation.

256. Defendant engaged in the practices complained of herein with malice and/or reckless indifference to Plaintiff Hadley's federally protected rights.

## COUNT THREE: PLAINTIFF IVA BURKETT'S  NAD JEAN MONTEL'S CLAIMS OF RETALIATION PURSUANT TO TITLE VII

257.    Plaintiffs re-allege and incorporate by reference paragraphs 1-256, above with the same force and effect as if fully set out in specific detail hereinbelow.

258.    Plaintiff Burkett engaged in protected activity.

259.    Plaintiff Montel engaged in protected activity.

260.    Plaintiff Burkett complained to supervisors, management, and Human Resources about the sex harassment, sex discrimination, and retaliation which she and others were subjected.

261.    Plaintiff Montel complained to supervisors, management, and Human Resources about the sex harassment, sex discrimination, and retaliation which she and others were subjected.

262.    Plaintiff Burkett filed two EEOC charges complaining of sex harassment, sex discrimination, and retaliation which she was subjected.

263.    As a result of Plaintiff Burkett's protected activity, complaints, and EEOC charges, Plaintiff Burkett subjected to harassment, discipline, disparate treatment, unequal assignments, loss of pay and suspension.

264.    Plaintiff Montel filed two EEOC charges complaining of sex harassment, discrimination, and retaliation which she was subjected.

265. As a result of Plaintiff Montel's protected activity, complaints, and EEOC charges, Plaintiff Montel was subjected to harassment, discipline, disparate treatment, unequal assignments, loss of pay and suspension.

266. Defendant's actions are causally related to Plaintiff Burkett's and Plaintiff Montel's protected activity.

267. Defendant does not have a legitimate non-retaliatory reason for its actions.

268. Defendant's conduct was pretext for retaliation.

269. Plaintiff Burkett and Plaintiff Montel were treated differently than similarly situated individuals who did not complain of harassment and discrimination.

270. Because of such conduct, Plaintiff Burkett and Plaintiff Montel have suffered severe emotional distress, embarrassment and humiliation.

271. Defendant engaged in the practices complained of herein with malice and/or reckless indifference to Plaintiff Burkett and Plaintiff Montel's federally protected rights.

## COUNT FOUR: STATE LAW CLAIM OF NEGLIGENT AND/OR WANTON SUPERVISION

272. Plaintiffs re-allege and incorporate by reference paragraphs 1-271 above with the same force and effect as is fully set out in specific detail herein below.

31

273. This claim is brought by all Plaintiffs and arises under the law of the State of Alabama to redress Defendant's negligent and/or wanton supervision of employees, supervisors, and management.

274. Plaintiffs were subjected to the conduct outlined above which was intentional, reckless, illegal and such conduct caused emotional distress.

275. Defendant was negligent and/or wanton in its supervision of its employees, supervisors, and management.

276. Defendant had actual knowledge of the conduct of its employees, supervisors, and management knew, or should have known of such conduct, and failed to take adequate steps to prevent and remedy the situation.

277. By its actions, Defendant ratified and/or condoned the illegal conduct of its employees, supervisors and management towards Plaintiffs and others. Defendant has negligently and/or wantonly failed to supervise its workforce in order to prevent and stop the illegal conduct.

278. Defendant's failure caused Plaintiffs to suffer severe emotional distress, embarrassment, and humiliation.

279. Defendant acted with malice and/or reckless indifference and its conduct was wanton and/or grossly negligent.

32

## COUNT FIVE: STATE LAW CLAIM OF
## NEGLIGENT AND/OR WANTON TRAINING

280.   Plaintiffs re-allege and incorporate by reference paragraphs 1-279 above with the same force and effect as is fully set out in specific detail herein below.

281.   This claim is brought by all Plaintiffs and arises under the law of the State of Alabama to redress Defendant's negligent and/or wanton training of employees, supervisors and management.

282.   Plaintiffs were subjected to the conduct outlined above which was intentional, reckless, illegal and such conduct caused emotional distress.

283.   Defendant was negligent and/or wanton in its training of its employees, supervisors, and management.

284.   Defendant had actual knowledge of the conduct of its employees, supervisors, and management knew, or should have known of such conduct, and failed to take adequate steps to prevent and remedy the situation.

285.   By its actions, Defendant ratified and/or condoned the illegal conduct of its employees, supervisors and management towards Plaintiffs and others. Defendant has negligently and/or wantonly failed to train its workforce in order to prevent and stop the illegal conduct.

286.   Defendant's failure caused Plaintiffs to suffer severe emotional distress, embarrassment, and humiliation.

287.    Defendant acted with malice and/or reckless indifference and its conduct was wanton and/or grossly negligent.

## COUNT SEVEN: STATE LAW CLAIM OF NEGLIGENT AND/OR WANTON RETENTION

288.    Plaintiffs re-allege and incorporate by reference paragraphs 1-287 above with the same force and effect as is fully set out in specific detail herein below.

289.    This claim is brought by all Plaintiffs and arises under the law of the State of Alabama to redress Defendant's negligent and/or wanton retention of employees, supervisors, and management.

290.    Plaintiffs were subjected to the conduct outlined above which was intentional, reckless, discriminatory, retaliatory, and illegal and such conduct caused emotional distress.

291.    Defendant was negligent and/or wanton in its retention of supervisors and management who engaged in such behavior.

292.    Defendant was negligent and/or wanton in its retention of employees who repeatedly violated policy and rules and whom no action was taken against.

292.    Defendant had actual knowledge of the conduct of employees, supervisors, and management, knew or should have known of such conduct, and failed to take adequate steps to prevent and remedy the situation. By its actions, Defendant ratified and/or condoned the illegal conduct of its employees, supervisors and management towards Plaintiffs.

34

293. Defendant has negligently and/or wantonly retained employees who engaged in harassing, discriminatory, and retaliatory conduct. By its actions/inaction, Defendant has allowed the illegal conduct to continue.

294. Defendant's failure caused Plaintiffs to suffer severe emotional distress, embarrassment, and humiliation.

295. Defendant acted with malice and/or reckless indifference and its conduct was wanton and/or grossly negligent.

## V.    **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

1.    Grant Plaintiffs a declaratory judgment holding that actions of Defendants described herein above violated and continue to violate the rights of Plaintiff as secured by Title VII of the Civil Rights Act of 1964.

2.    Grant Plaintiffs a permanent injunction enjoining Defendant, Defendant's agents, successors, employees, attorneys and those action in concert with Defendant and on Defendant's behalf from continuing to violate Title VII of the Civil Rights Act of 1964, and the laws of the State of Alabama.

3.    Grant the Plaintiffs an Order requiring Defendant to make Plaintiffs whole by awarding each lost wages, compensatory, punitive, and/or nominal damages.

35

4.      Grant Plaintiff Hadley an Order providing her with reinstatement into the position she would have had absent discrimination and/or retaliation, backpay, plus interest.

5.      Plaintiffs further pray for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

                                    Respectfully submitted,

                                    */s/ Rocco Calamusa, Jr.*
                                    Rocco Calamusa, Jr. (asb-5324-a61r)
                                    WIGGINS, CHILDS, PANTAZIS,
                                        FISHER & GOLDFARB, LLC
                                    The Kress Building
                                    301 19th Street North
                                    Birmingham, Alabama 35203
                                    Telephone: (205) 314-0500
                                    rcalamusa@wigginschilds.com

                                    *Attorney for Plaintiffs*


**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.**

                                    */s/ Rocco Calamusa, Jr.*
                                    OF COUNSEL



**DEFENDANT'S ADDRESS:**
**Escambia County Board of Education**
**c/o Superintendent Dr. Michele W. Collier**
**301 Belleville Avenue**
**Brewton, AL 36426**

                                    */s/ Rocco Calamusa, Jr.*
                                    OF COUNSEL